[Civ. No. 13135. First Dist., Div. One. Nov. 25, 1946.]

H. C. GUILD, Appellant, v. STOCKTON ICE RINK CO. et al., Respondents.

Mueller & Westover for Appellant.

William A. White for Respondents.

SCHOTTKY, J. pro tem.—Appellant commenced an action against respondents, the first cause of action of which sought to recover the sum of $2,367.97 alleged to be due upon a contract concerning the erection of an ice rink in Stockton, and the third cause of action of which sought to recover the sum of $1,215 for services as a consulting engineer rendered to respondents by appellant at respondents' special instance and request. A second cause of action upon a book account was abandoned at the trial. Respondents in their answer set up nonperformance by appellant and denied that any sums were due appellant. Respondents also filed a cross-complaint in which they alleged an overpayment of $473.59 to appellant and also alleged that nonperformance of the contract by appellant damaged them in the sum of $11,000. During the course of the trial respondents were permitted to file an amendment to their answer setting up the defense that said third cause of action was barred by subdivision 1 of section 339 of the Code of Civil Procedure. The court found that appellant was not entitled to recover on either cause of action, and further that respondents were not entitled to recover upon their cross-complaint, the court finding also that there was an overpayment of $473.59 by respondents, but that any claim thereon had been waived by them. This appeal is from the judgment rendered against appellant upon his complaint.

Plaintiff is a "consulting engineer for the construction of ice rinks." On August 1, 1941, an agent of defendants, Tom Boothe, accepted plaintiff's proposal to construct a direct expansion ice rink for defendants. This proposal was in the form of a letter and the specifications therein were itemized with reference to another proposal which defendants had received concerning the erection of a brine ice rink. The pertinent portions of the proposal which the court found to be the agreement of the parties read:

"This equipment is designed for producing an ice skating surface 70' x 140' in the City of Stockton, California. All dimensions are subject to minor variations and changes in order to fit the apparatus to the contemplated building measurements, or secure maximum results. . . .

"In this specification requisite performance has been considered first, availability of material second. First cost is simply the totaling of the best procurable price at this time.

"*Item 1.  AMMONIA  COMPRESSORS*

"Two—8" x 8", standard make—Worthington, Baker-Frick, York or equal, complete with all standard equipment, including Y-belt drives. . . .

"*Item 3:  CONDENSER* (Tubular condenser cheaper but not best).

"1,000 Lin. feet of condensing surface made up into vertical atmospheric evaporative condenser, complete with natural air circulation and gravity water circulation. . . .

"*Item 19:  MOTORS AND DRIVE*

"This proposal includes the furnishing of two 125 HP Butane engines, complete with Governors, Tachometers, power takeoffs, V-belts, fuel tank and all accessories. . . .

"*Item 24:  ERECTION*

"Complete erection is here included. . . .

"The price of the above equipment is $22,814.00 which carries ten per cent to me. . . .

"My proposition would be ten per cent as stated. If the job cost ran over the estimated cost it would come out of my fee. If it ran under we would split the saving 50-50.

"This of course would not hold good in event of a raise in prices as my figures are based on prices quoted today."

The three specific items of material above noted are the principal items with respect to which nonperformance is alleged. It is admitted even by plaintiff that the above specifications and price were based on new materials, and that only one used compressor was present in the finished ice rink. It is also admitted that only 750 square feet of condensing surface were installed. (With an installation using only one compressor, this condensing surface would appear to be all that could be used.) Finally, it is admitted that one of the engines was 110 h. p. and there is evidence that the other engine was only 110 h. p. However, the rink was opened to the public in November of 1941 and has been operating ever since with various difficulties in freezing and holding the ice in parts of the rink. The evidence in defendants' favor supports the conclusion that at no time did defendants consent to the lack of a second compressor and made constant efforts to secure another one.

The record shows that the rink as constructed cost $4,735.93 less than the $22,814 contract price and the first cause of action in plaintiff's complaint sought to recover 50 per cent of that amount pursuant to the terms of the contract. The cost of two new compressors installed is approximately $6,130; the cost of the additional condensing surface approximately $250; and the cost of the additional horsepower motors, approximately $600. The used compressor cost approximately $1,890. Defendants paid plaintiff $2,281.40, of which the court found that $473.59 was an overpayment, any claim for which was waived by the defendants, this amount being 10 per cent of the difference between actual cost and contract price and in accord with plaintiff's testimony as to what he meant by the 10 per cent.

Appellant makes a vigorous attack upon the judgment against him as to the first cause as being contrary to and unsupported by the evidence. He argues that the agreement was a contract for his services as a consulting engineer and that it was not a contract for equipment. He argues further that in any event any variations in the equipment were but minor variations and that the contract was substantially performed. He asserts that because the court made a finding that appellant did not have a state license either as a contractor or a civil engineer, the court considered appellant as a building contractor or a civil engineer and that the court's decision was based upon that issue.

These contentions of appellant lack substantial merit. The record amply supports the finding of the trial court that by reason of the failure of appellant to provide the equipment called for by the agreement he was not entitled to recover one-half of the difference between the cost of the rink and the contract estimate of $22,814. To hold otherwise would be to permit appellant to omit part of the equipment specified, substitute used equipment where new was specified, produce a rink less efficient than it would have been had the specified equipment been provided, and then actually profit by the lower price brought about by his failure to perform according to the plain terms of the contract.

As to appellant's contention that the license issue was erroneously injected into the case, there is the court's finding of the undisputed fact that appellant did not have either a contractor's license or a civil engineer's license, but there is no finding that, in carrying out his agreement in the

instant case, appellant was acting either as a contractor or a civil engineer. In view of the fact that the court was no doubt convinced that the appellant has failed to perform the contract and was, therefore, not entitled to recover upon his first cause of action, a finding as to whether he was acting as a contractor or a civil engineer was of no importance, as, under the evidence and the finding of the court, he was not entitled to recover judgment even if he were a duly licensed contractor or civil engineer. It is, therefore, unnecessary to decide whether appellant was acting as a contractor or a civil engineer.

Appellant next attacks the judgment against him as to the third cause of action. This cause of action was in the form of a common count as follows: ''That within four years last past at the City and County of San Francisco, State of California, said defendants became indebted to said plaintiff in the sum of Twelve Hundred Fifteen and no/100 ($1215.00) Dollars for professional services rendered said defendants at said defendants' special instance and request as a consulting engineer.'' Respondents denied said allegation and at the trial, when it appeared that appellant was not relying upon a written agreement, respondents were permitted by the court to file an amendment setting up the defense that this cause of action was barred by subdivision 1 of section 339 of the Code of Civil Procedure.

At the trial appellant produced an itemized list of services which he testified were performed for respondents in addition to the services called for by the contract involved in the first cause of action. These services for the most part were in connection with trying to get the additional compressor called for in the aforesaid contract or in getting the equipment that had been installed to function better. The record shows that respondents on a number of occasions were urging appellant to get the extra compressor and were also urging appellant to remedy what they considered to be faulty operation of the equipment installed under appellant's direction. After the amendment setting up the two-year statute of limitations, appellant virtually abandoned seeking to recover for the items occurring prior to two years before the filing of the complaint, thereby reducing his asserted claim from $1,215 to $531, and appellant does not now claim that he should have recovered judgment for more than $531 upon said third cause of action.

The court found that the allegations of said paragraph III of the third cause of action were untrue and also that the third cause of action was barred by subdivision 1 of section 339 of the Code of Civil Procedure.

Appellant argues that no witness testified that the services covered by the third cause of action were not performed, nor that the reasonable value thereof was not $1,215, as testified to by appellant, and attacks the finding of the court that appellant's allegation that respondents became indebted to him is untrue. Appellant asserts that the court should have found that the said allegations are true but that the items prior to March 7, 1942, are barred by the statute.

However, the trial court was the judge of the weight of the conflicting testimony, and we may not interfere with its finding if it is supported by substantial evidence. Upon the record here, we believe that the trial court was fully justified in concluding that the services which appellant claimed were extra and additional services were in fact services which he was required to perform in carrying out his agreement to procure and have installed in respondents' rink the equipment called for in the agreement. The fact that respondents kept after appellant to get the rest of the equipment and did not consider that appellant had completed his contract, and the further fact that appellant had never sent respondents a bill or made any demand for these so-called extra services prior to the filing of the action, all lend support to the conclusion reached by the trial court.     The finding that said cause of action is barred by the statute of limitations is perhaps too broad insofar as it relates to the items within the two-year period, but, in view of the prior finding that the respondents did not become indebted to appellant as alleged in said third cause of action, the finding as to the statute of limitations may be disregarded. For, as stated in 2 California Jurisprudence, pages 1028-9, section 612: ''But if a judgment is amply supported by findings which are unobjectionable, findings on other issues become immaterial, and it is not ground for reversal that such other findings are unsupported by evidence, or are uncertain or otherwise defective. However unsupported or inconclusive any number of findings may be, if in any case there be at least one clear, sustained and sufficient finding upon which the judgment may rest, every presumption being in favor of the judgment, it will be concluded on appeal that the court rested its judg-

ment upon that finding (or such findings) and the others will be disregarded.'' (Citing numerous cases.)

No other points raised by appellant require discussion. A reading of the record convinces us that not only is the judgment amply supported by the evidence, but it is difficult to understand how the court could reasonably have arrived at any other conclusion.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.